Please be seated. Madam Clerk, call the case. 3-090-679, people of the city of Hawaii, accolade by Mark Costco v. Michael Hayes, pellet by Maureen Williams. You may proceed. Thank you, Justice. I'm Maureen Williams, representing Michael Hayes in this case, which is about a kid, really, who was 23 years old,  and he had two charges to begin with. He had a number of charges, but basically two actions. One, he was in possession of unlawful substance, and he was in unlawful possession of a weapon. These two combined, and the state threw in a charge of armed violence. And it's our contention that the sentence was extreme. It was disproportionate. The sentence was brought about by using a charge that had not resulted in a conviction. And in addition, the prosecutor had failed to disclose a deal with one of their witnesses who basically was the only evidence that my client had drugs in his possession. My client had no criminal history. He had some misdemeanors for cannabis possession, but this was a first-time offense. Aren't misdemeanors offenses? Pardon? Aren't misdemeanors offenses? They are, Your Honor. It does not rise to the level of a felony when the person is engaged in the plea bargaining procedure, but it seems as if the courts treat the misdemeanors as not such a damaging record, as if the person made it to 23 with a number of felonies, which happens in a lot of felonies, a lot of my clients' cases. The charge that was used in sentencing should not have been charged. The state, in its brief, incorrectly states that one of the factors in aggravation allowed the court to use criminal activity, in other words, a charge that did not result in a conviction, as a factor in aggravation, and it's just not correct. They cite number three, which states the defendant has a history of prior delinquency or criminal activity. The state was arguing that the fact that there was criminal activity allowed the court to use this charge that had not resulted in a conviction as a factor in aggravation, but if number three is read correctly, it says a history of prior delinquency or criminal activity. My client did not have a history of either. My client did have a history of he finished high school. He started ICC, which is a community college. He also worked. He had a 14-month stint at one restaurant, I believe, and he was a responsible father, and he was getting ready to marry the mother of his child. The factors in mitigation, which were many, were not looked at. Instead, a charge that had not resulted was considered, and that was error. The fact that this, there's a little bit, there's some question whether the trial attorney was cut off in trial by the court. Maybe the trial attorney could have made an offer of proof for the sake of this court, but we've all been there when the court tells you in so many words, we're not going there, and you honor that. First of all, you're sitting next to your client. You don't really want to get belittled by the court because you're asking questions that you know the court does not allow, but my main argument as far as disclosing the deal was they did get it out of the witness that there was consideration, but that was it. They said, well, are you receiving consideration for your testimony? Yes, and that was it. I contend that a prosecutor should have, and according to the law should have, disclosed the deal, the promise of leniency. She was the only one in a superior, she had superior access to information regarding the proof of leniency. We're given deals in writing all the time before the actual date of scheduling conference, and because this person was in the jail for so long, I really find it doesn't matter whether I believe he had a deal or not. What matters is there was a deal, and it was not disclosed, and it should have been. The disproportionate, the sentence was disproportionate. The sentence for the armed violence was disproportionate to the nature of the offense and the possibility of rehab. The possibility of rehab should not be overlooked because this is a person that did have a potential to be rehabilitated. This was the first time he was charged with a felony, and he was on his way. He was just in his 20s, just starting out, and he gets slammed, and he's thrown. For a person, a first-time offender, it's wholly disproportionate, and then when you consider that the maximum penalty for unlawful possession of a weapon is three years, and the maximum sentence for unlawful possession of drugs, three years, so really the maximum is six, he ends up with 23 years. The state, I contend, was, they should not have charged him with armed violence because the whole purpose of armed violence statute is to deter felons from using dangerous weapons, thereby minimizing the deadly consequences which may result when a felony victim resists. As my brief lays out, this was a case where there was not a victim. The person had, the underlying predicate was, for the armed violence, was possession of a drug. There was no victim. When my client was dragged out of the car, he kept repeating, I'm not resisting, I'm not resisting. There was no victim, and if the purpose of the statute is to deter felons from using dangerous weapons to minimize the deadly consequences, it's not, it can have nothing but a disproportionate penalty if there was not a victim in this case. This was not even predicated on a possession with intent to sell. It was solely predicated on possession of the drug, and there are numerous cases where a defendant is charged with unlawful possession of a drug and unlawful possession of a weapon when the person is not charged with armed violence. And it's, because of the purpose of the armed violence statute, it is up to this court to look it over and say, maybe the sentence is proportionate. Maybe the state should not have charged him with this, with armed violence, because armed violence, it wasn't armed possession. This was not a crime of violence.  One last note on the penalty for armed violence. The penalty violates a proportionate penalty if it's cruel, degrading, and so wholly disproportionate to the offense committed as to shock the moral sense of the community. 23 years for two individual convictions that would have breaked in six years is wholly disproportionate. It is degrading, it's cruel, and it's preventing the person from the possibility of rehabilitation. So I'd ask this court to rule that this sentence for armed violence was, in fact, wholly disproportionate. Not only that, it was predicated on a charge or a conviction that came about after the trial court relied on a witness whose deal was never disclosed, not even at trial, let alone prior to trial. If the court does not have anything further, I'll conclude my argument. Thank you. Thank you, Counsel. Counsel, you may proceed. May I please, Court? Thank you. Your Honors, I'm going to briefly detail the facts of the case since we haven't talked about those yet this morning, and then I'll address the defendant's issues. On July 12, 2007, the defendant was pulled over for a traffic violation. He was driving a rental car that he was not authorized to drive. The defendant had his young daughter in the backseat of the vehicle and refused to exit the vehicle when the police asked him to do so. Officers Watkins and Williams were attempting to remove the defendant from the vehicle when Watkins felt what felt like a gun to him in the pocket. So they took him to the ground, and they found a loaded revolver in one of his pockets. Pat Downer's search revealed that he had $532 in cash and a baggie containing cannabis on his purse. He was placed in the backseat of the squad car, remained for about 20 to 30 minutes, and during that time he was very upset. He was rocking back and forth and side to side, and at one point he asked to have his cuffs loosened because he felt they were too tight. There was a period of about 10 minutes during that time when he was not observed by any officer. He was eventually transferred to a paddy wagon to be taken down to the station, and that's where Brian Roker comes into the picture. He was already in custody, and he was in the wagon when the defendant was placed into it. The officers continued their shift, and after about 10 to 15 minutes they smelled the odor of cannabis in their squad car. Officer Watkins has an allergy to cannabis and had to pull over because of that smell during the shift. On several occasions they tried to find the source of that odor, but they couldn't find anything. After the defendant was delivered to the station, Officer Sasso, the driver of the paddy wagon, was told by Roker that the defendant had bragged about hiding drugs in the back of the squad car, in the backseat. So he told this to Sasso. Sasso called the officers, Watkins and Williams, and told them to search the backseat of their squad. So they removed the backseat cushion, couldn't find anything, but they did see a baggie sticking out from underneath the bench, the back bench, and they couldn't pull it out. They were afraid they were going to tear it open. So they went into the station, and they used tools to remove the backrest, and they found there a baggie containing 2.5 grams of cannabis and a second baggie containing 17 bundles of heroin, a total weight of 1.2 grams. Now, in trial, Roker testified against the defendant, stating that while he was riding the transport wagon, the defendant had told him about hiding some boy, some heroin, in the squad's backseat. Roker confirmed that he had pending charges for unlawful possession of a controlled substance and for unlawful possession with intent to deliver. So in open court, prior to cross-examination of Roker, the prosecutor asked whether Roker was getting consideration on those charges in exchange for testimony in his case, and Roker replied that he was. So it was before the trial, in fact, in open court before cross-examination. They didn't go into any more detail, though, did they? They didn't cover any more detail about that? About any pending deal or something? No, there was no discussion that there actually was a deal in place at that point or what consideration he may be receiving at all. And counsel argues that the people attempted to keep this plea deal hidden, but trial counsel never objected to his testimony and never stated there was any kind of Brady violation at any time. In this case, there is no record of any consideration the defendant may have received or did receive any consideration that was related to any testimony in this case. During the post-trial hearing, defendant's post-trial counsel stated there was nothing in the file that described the deal that Roker was getting, which is what you were alluding to. Also, the post-trial counsel did not state in any motions that there had not been disclosure in discovery regarding potential consideration Roker may have received or expected to receive. In fact, the trial judge, noting that the court records showed that Roker received a deal 15 days after trial, specifically found that there was no record showing that the deal Roker received was related to the testimony in this particular case. Defendant argued that they tried to keep this purported deal hidden by objecting to a question at trial, why was Roker at the police station, firing and being transported. Prosecutor objected on the grounds of relevance. Roker had not even met defendant at this point, so even if he'd been involved in some sort of plea discussion in another case, it could not possibly have been relevant to this case. Regardless, the trial judge overruled the objection and only precluded the stating of other case names. Defendant's trial counsel fully examined or cross-examined Roker without any interruption from the trial judge or any limitation on his cross-examination. So he had complete access to any information that Roker may have been able to provide to him. So there was no hiding of anything at this point. The most important thing to note is that the trial judge knew that Roker expected consideration because people reported him of this fact. And, you know, our Supreme Court in Pecoraro stated that people do not have an affirmative duty to inform the trial judge of the existence of a promise of leniency in exchange for testimony unless the witness testifies falsely or that he or she is not receiving consideration. And the Bannister Court stated that bargaining for specific trial testimony is not inconsistent for the search for truth or due process. The trial judge acknowledged that each piece of evidence, standing alone, would not rise to prove beyond a reasonable doubt, but when taken together there was no other conclusion than that the people had proven their case. There's no record that the people filled in discovery to disclose the fact that Roker expected to receive consideration. The trial judge found that Roker's testimony was credible. The heroin was found in the backseat where he claimed it was going to be found, and no one else could have put it there other than defendants. And counsel raises that he's claiming that the trial judge improperly considered a pending charge, and that is not accurate. A trial judge can consider a pending charge when determining sentencing. This Court in Harris and our Supreme Court in Hudson have stated that criminal conduct for which there is no prosecution or conviction may be considered in sentencing. And this Court in English, citing the Supreme Court case in Jackson, stated that such evidence should be presented by witnesses who can be confronted and cross-examined. In this case, Officer Barish testified in aggravation. Defense counsel objected to the admission of the testimony. The objection was overruled, and defense counsel did fully cross-examine Officer Barish. And it was noted in the people's brief that this Court in English reviewed a very similar, factually similar situation and found that the police officer's testimony regarding the defendant's prior criminal conduct was subject to cross-examination and therefore was properly considered by the sentencing judge. So in this case, the defendant's crime was properly considered by the judge. The defendant also argues that the armed violence statute is not properly invoked in this case because it was a possession offense. She asserts that there's no chance that violence will erupt, that this is a victimless crime. I'm not sure which crime is victimless, the carrying of the weapon or the possession. Regardless, it's obviously not the case. The second district in Anderson observed that a felon with a weapon at his disposal was forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of the deadly force. In this case, this Court has obviously and undoubtedly seen, you know, just some really devastating effects of illegal drugs on families, on individuals, on the society at large because of possession of illegal drugs and sale of drugs. In this case, we've got the defendant who's a young man. He's got a young child with him at this time when he's got the drugs with him and stuff. He's going to jail, so there's a victim right there. This little child no longer has a father at home, so, you know, this is not a victimless crime. And to prove the defendant guilty of armed violence, they have to just show that he was armed with a dangerous weapon while he committed a felony that was not excluded by the armed violence statute. In this case, he was proven to have committed a felony of possession of controlled substance, which is not excluded as a predicate offense for this crime, and the defendant possessed a loaded handgun when he committed the offense. He admitted to carrying a loaded handgun while he was in possession of cannabis, so therefore he was properly charged and found guilty on the offense of armed violence. The defendant also brings up the penalty is too harsh in this particular case. The stated legislative intent for an armed violence statute is to deter the use of firearms in the commission of a felony offense, and it's appropriate to impose a greater penalty when a firearm is used. The legislature determined that the use of a dangerous weapon in the commission of a felony poses a threat and a potential for deadly harm or for bodily harm. So here we get the trial. The judge stated that he did consider all the statutory sentencing factors. He found a mitigation that even though the defendant was carrying a loaded gun while in possession of the heroin cannabis and violently resisted arrest, his conduct did not cause any serious physical harm. He noted that the defendant's criminal history, as defense counsel has noted, was not of a serious nature at that time. He just had misdemeanors and some traffic violations and such. However, the trial judge said that the most telling observation was that the defendant admitted to the possession of the weapon when he pled guilty to that particular charge. He found an aggravation that the defendant was involved in another incident where a gun, drug dealing, paraphernalia, and drugs were found in his presence, in his own residence, and that this happened while he was out on pretrial release in this case. So he committed another drug offense while he was awaiting trial for drug and armed violence charges. And the trial judge noted that he could consider any aggravation offenses which were uncharged or for which there had been no conviction because the judge can consider any facts that tend to aggravate that offense. And this court in Reed has also verified that you can, in fact, consider an aggravation on charges that are appended. The judge found that the overriding factor had to be the protection of the community and a sentence for more than minimum terms required. A minimum sentence for armed violence is 15 years, maximum is 30 years. He got 20. It's well within the sentencing range. A sentencing range for unlawful possessions of class 4 is 1 to 3 years. He got 3 years to max. But that is a concurrent sentence. So he got 23. However, he's only going to serve 20. So it's not, as she says, 23 years actually incarceration. It's 20 years. He does have a concurrent 3-year sentence. Your Honors, at this point I'll stand on my brief for any further argument. Do you have any questions for me? Thank you. Counsel, you may respond. Thank you. The court will take this case under advisement, and we'll recess for a panel change for the next case.